IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUDY DILLEY,

                Plaintiff,

v.                                         OPINION & ORDER

HOLIDAY ACRES PROPERTIES, INC. and               16-cv-91-jdp
STEVE KRIER,

                Defendants.

---

Plaintiff Judy Dilley was injured when she fell from a horse provided by defendant Steve Krier's business, Holiday Stables, which is located on land owned by defendant Holiday Acres Properties, Inc. Dilley asserts claims against Holiday Acres and Krier, alleging that they failed to ensure her safety.

Holiday Acres has filed three motions: (1) a motion to strike Dilley's experts, Dkt. 62; (2) a motion for summary judgment, Dkt. 40; and (3) a motion for a protective order, Dkt. 86. The court will grant the motion to strike. Dilley's retained expert is excluded because the expert's conclusory report does not establish the admissibility of her testimony under Federal Rule of Evidence 702. Dilley's medical experts are excluded because summaries of their opinions were not timely disclosed. The court will grant Holiday Acres' motion for summary judgment because Wisconsin's equine immunity statute bars Dilley's negligence claims against Holiday Acres. The court will defer ruling on the motion for a protective order.

Krier, who appears pro se, has not moved for summary judgment. But evidence submitted by Dilley and Holiday Acres shows that the equine immunity statute applies to Krier

as well. Accordingly, the court will order Dilley to explain why the court should not grant summary judgment to Krier as well.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Holiday Acres runs a resort in northern Wisconsin. It also owns a parcel of land near the resort and a set of stables located on that land. Krier runs Holiday Stables, a business that gives horse-riding tours to its customers, using Holiday Acres' stables and horses leased from a third party.

The accident happened during a horse-riding tour. Dilley rode a horse named Blue, and Nicole Kremsreiter, a tour guide who worked for Krier, rode a horse named Roany. Kremsreiter rode ahead of Dilley, and neither Krier nor any employee of Holiday Acres was present during the accident. Dilley fell from Blue and was injured. The parties dispute the precise cause of Dilley's fall. According to Dilley, Blue got close to Roany, Roany kicked Blue, and Blue to reared up, throwing Dilley backward. Dkt. 1, ¶ 19 and Dkt. 65, ¶ 63. Holiday Acres, on the other hand, states that Blue did not rear up, but was spooked by some other animal in the bush and stopped abruptly. Dkt. 39 (Kremsreiter Dep. 40:1-18) and Dkt. 65, ¶ 63. The precise cause of Dilley's fall is not material to the motions before the court, but for purposes of Holiday Acre's motion, the court will credit Dilley's version.

Dilley contends that Holiday Acres and Krier acted negligently in various ways, and she adduces evidence relating to four issues: (1) whether Dilley was offered a helmet; (2) whether she received instructions on how to ride a horse; (3) whether Krier properly fit the stirrups on Blue; and (4) whether Kremsreiter ignored Dilley when Dilley said she could not keep a hold

2

on the reigns. Dkt. 65, ¶ 53-55, 57-59. Some of the underlying facts are disputed, but again the court will credit Dilley's version of the facts. Dilley purports to raise other factual disputes relying on the report of her retained expert, Dkt. 55, but the court will strike that report, as discussed below.

The court has subject matter jurisdiction on the basis of diversity under 28 U.S.C. § 1332. Dilley is a citizen of Illinois. Holiday Acres is a Wisconsin corporation with its principal place of business in Wisconsin. Krier is a citizen of Montana (because he is domiciled there, even though he resides in Wisconsin). So the parties are diverse. The amount in controversy exceeds $75,000.

ANALYSIS

A. Holiday Acres' motion to strike

Holiday Acres moves to strike Dilley's retained expert, Jan Dawson, who opined that Holiday Stables lacked various procedures that would have ensured Dilley's safety. Dkt. 62. Holiday Acres also moves to strike opinions of ten medical professionals who treated Dilley's injuries. *Id*. The court will grant both parts of the motion.

Under Federal Rule of Evidence 702, an expert opinion is admissible only if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert may not bypass these requirements by "offer[ing] credentials rather than analysis." *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (citations omitted).

Dawson's opinion does not satisfy the second, third, or fourth requirements. Dawson's scanty three-page report does not identify any principle or method. Instead, she provides only her conclusory assertion that she looked through the parties' submissions in this case and found no evidence that Holiday Stables had procedures to ensure Dilley's safety. Without meaningful analysis, Dawson's report is merely her *ipse dixit*, which this court must exclude. *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("We have said over and over that an expert's *ipse dixit* is inadmissible. 'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" (quoting *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)). And the issue here is not whether Holiday Stables had procedures to ensure Dilley's safety, but whether the equine immunity statute applies. Dawson's report is inadmissible under the Federal Rules of Evidence.

Dilley argues that Dawson's report is admissible, just as was the expert report in *Mettler ex rel. Burnett v. Nellis*, 2005 WI App 73, ¶ 11, 280 Wis. 2d 753, 695 N.W.2d 861. But that case was decided under the Wisconsin rules of evidence applicable at the time. As the court of appeals put it, "opinion testimony by an expert witness is admissible at trial as long as the expert is qualified and has adequate foundation for the opinion." *Id*. at ¶ 11. That is simply not the standard under the Federal Rules. And in 2011, after *Mettler*, Wisconsin amended Wis. Stat. § 907.02 to embrace the federal approach to expert evidence, so the *Mettler* decision is no longer good law.

As for the opinions of the ten medical professionals, the court will exclude them under Federal Rule of Civil Procedure 26(a)(2)(C). Under Rule 26(a)(2), not all experts need to provide full written reports. Non-retained experts, like the medical providers in this case, need not provide full reports, but the party seeking to rely on those experts needs to disclose (1) "the

4

subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705"; and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Under Rule 37(c)(1), failure to comply with Rule 26(a) results in an "automatic and mandatory" exclusion unless the non-compliance is "justified or harmless." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).

In this case, Dilley did not meet the second requirement under Rule 26(a)(2)(C). Here is what Dilley disclosed as to her ten medical experts:

> The subject matter for these witnesses' testimony will relate to medical and/or health care provided to Ms. Dilley, including but not limited to diagnosis, causation, treatment, prognosis, nature, extent and duration of the injury, past and future pain and suffering; past and future disability, including any work restrictions necessitated by the injury; necessity of medical treatment, past and future; and reasonableness and necessity of medical expenses; and any other matters set forth in the medical records produced to date and in their depositions.

Dkt. 51, at 1-2. This disclosure might satisfy the first requirement under Rule 26(a)(2)(C); it identifies the overall subject matter of the medical professionals' testimony. But it does not provide a summary of the facts and opinions about which they are expected to testify. Accordingly, Dilley's disclosure does not satisfy Rule 26(a)(2)(C).

While Holiday Acres' motion to strike was pending, Dilley filed an amended disclosure of expert witnesses, Dkt. 68, which does provide summaries of facts and opinions for the ten medical professionals. But this disclosure came too late: the deadline for the disclosure of experts was October 17, 2016, Dkt. 20, at 2, and the new disclosure was served on February 20, 2017, Dkt. 68, at 5, while Holiday Acres' summary judgment was pending and after Holiday Acres moved to strike her medical experts.

5

Dilley contends that any harm to Holiday Acres was "resolved" when the court adopted the parties' stipulation to extend the discovery deadline by a month. Dkt. 72, at 24-25. In that stipulation, the parties stated that one of the reasons for the extension was to allow Holiday Acres to "depose Dilley's medical providers." Dkt. 69. But this stipulation does not establish that Dilley's failure to comply with Rule 26 was harmless. One extra month to depose ten medical experts (who are all out of Wisconsin) and to prepare rebuttal experts is hardly enough to make up for Dilley's delay in disclosing the required information.

In sum, the court will grant Holiday Acres' motion to strike for the foregoing reasons. Ultimately, the court's decision to strike the medical experts has no real consequence because Dilley cannot establish defendants' liability.

**B. The equine immunity statute**

A district court must grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the nonmoving party, but "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To withstand summary judgment, "a party may rely only on admissible evidence." *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

Holiday Acres moves for summary judgment on all of Dilley's claims: negligence, negligence per se, and "Willful, Wanton & Malicious Conduct." Dkt. 21, ¶¶ 26-36 and Dkt. 40. Holiday Acres contends that Wisconsin's equine immunity statute, Wis. Stat. § 895.481, shields it from Dilley's claims.

### 1. Holiday Acres is entitled to immunity

The parties agree that Wisconsin law governs Dilley's claims. Wisconsin's equine immunity statute extends broad immunity to those who sponsor or provide horse-back riding and other equine activities. The statute, in pertinent part, provides:

> Except as provided in subs. (3) and (6), a person, including an equine activity sponsor or an equine professional, is immune from civil liability for acts or omissions related to his or her participation in equine activities if a person participating in the equine activity is injured or killed as the result of an inherent risk of equine activities.

§ 895.481(2). Two subsections, §§ 895.481(3) and (6), provide exceptions to the general rule of immunity under the statute. One subsection concerns "products liability laws"; it is irrelevant here. § 895.481(6). The one that matters, § 895.481(3), states that a party is not immune if it "does any of the following":

> (a) Provides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death.
>
> (b) Provides an equine to a person and fails to make a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability.
>
> (c) Fails to conspicuously post warning signs of a dangerous inconspicuous condition known to him or her on the property that he or she owns, leases, rents or is otherwise in lawful control of or possession.
>
> (d) Acts in a willful or wanton disregard for the safety of the person.
>
> (e) Intentionally causes the injury or death.

So the questions here are whether Holiday Acres is within the scope of the grant of immunity, and if so, whether any of the exceptions applies.

Holiday Acres is within the scope of the immunity statute, § 895.481(2). Holiday Acres satisfies the statutory definition of "equine activity sponsor" because it provided the land and the stables where Krier operated Holiday Stables, and the land and the stables were the "facilities" for the "equine activity." § 895.481(1)(c). Horse riding is an equine activity. § 895.481(1)(b). And none of the enumerated exceptions under § 895.481(3) appears to apply here: Holiday Acres did not provide Dilley with any equipment; did not provide her with a horse; did not know of "a dangerous inconspicuous condition"; did not act in a "willful or wanton disregard" for Dilley's safety; and did not intentionally cause Dilley's injuries. *See* § 895.481(3).

Dilley contends that Holiday Acres is not immune under the statute for three reasons: (1) Holiday Acres failed to post a warning sign that it is immune under the equine immunity statute; (2) she was not injured as the result of an "inherent risk" of horse riding; and (3) Holiday Acres "failed to safely manage the riding situation," despite knowing Dilley's inexperience in horse riding. Dkt. 59, at 2-7, 12-14. Each of these arguments fails as a matter of law.

First, Dilley contends that Holiday Acres is not immune because it failed to comply with §§ 895.481(4) and (5), which require an "equine professional" to display a warning sign. The signage provisions apply to only equine professionals, not to an equine activity sponsor like Holiday Acres. §§ 895.481(4) and (5). Dilley adduces no evidence showing that Holiday Acres is an equine professional under § 895.481(1)(d), which defines the term "equine professional." Thus, §§ 895.481(4) and (5) do not apply to Holiday Acres. (And Krier did post a notice, which is discussed below.)

8

Second, Dilley contends that she was not injured because of "an inherent risk of equine activities." Dkt. 59, at 3. According to Dilley, § 895.481(2) immunizes only the rider's "errors" and does not immunizes others' negligence. *Id*. at 3. She then argues that "genuine issues of material fact exist regarding whether [the] accident was caused by an inherent risk of riding **instead** of by the negligent and reckless conduct of" Holiday Acres. *Id*. at 6 (emphasis in the original). Dilley is fundamentally mistaken about the scope of the equine immunity statute. The statute immunizes negligence by "any person, 'including an equine activity sponsor or equine professional.'" *Kangas v. Perry*, 2000 WI App 234, ¶ 11, 239 Wis. 2d 392, 620 N.W.2d 429 (quoting § 895.481(2)). The statute expressly recognizes that the inherent risks of equine activities include the fact that horses have a propensity to behave in a way that might result in injuries and that horses react unpredictably. § 895.481(1)(e). The event that Dilley alleges caused her injury—one horse kicking another horse—is clearly within the type of event recognized as an inherent risk of equine activities under the statute. Even the potential for negligence by the participants in equine activities is recognized as an inherent risk. § 895.481(1)(e)(4). Dilley thus cannot avoid the equine immunity statute by arguing that her injuries were caused by someone's negligence. If a plaintiff could avoid the immunity statute by showing negligence, then the equine immunity statute would be essentially pointless.

Third, Dilley argues that Holiday Acres is not immune under the equine immunity statute because the exception in § 895.481(3)(b) applies. That subsection provides that a person is not immune if that person:

> [p]rovides an equine to a person and fails to make a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability.

9

Dilley contends that this subsection applies because the defendants did not safely manage the ride and ensure her safety.

There are two flaws in Dilley's argument. First, Dilley adduces no evidence that Holiday Acres "provided an equine" to her. Wisconsin courts construe "provided an equine" to mean "to make available for use an equine that the provider either owns or controls." *Hellen v. Hellen*, 2013 WI App 69, ¶ 23, 348 Wis. 2d 223, 831 N.W.2d 430 (quoting *Barritt v. Lowe*, 2003 WI App 185, ¶ 11, 266 Wis. 2d 863, 669 N.W.2d 189). The parties agree that Krier leased Blue and Roany from a former manager of the stables, not from Holiday Acres. Dkt. 64, ¶ 16; *see also* Dkt. 37 (Zambon Dep. 72:15-22 ("Holiday Acres . . . is not a horse business.")). Dilley adduces no evidence that Holiday Acres controlled those two horses. Thus, Holiday Acres neither owned nor controlled the horses provided, so § 895.481(3)(b) does not apply to Holiday Acres.

The second flaw is that Dilley misconstrues the scope of the exception: the exception does not apply to every equine professional who fails to "safely manage the riding situation." The exception, rather, imposes two narrower obligations to assess the potential rider's ability to undertake the ride. *Hellen*, 2013 WI App 69, ¶ 21, n.8. The first obligation is to make a reasonable effort to determine whether the potential rider is capable of safely engaging in an equine activity. The second is to make a make a reasonable effort to determine whether the potential rider can safely manage the particular horse provided. And both determinations are to be made based on the potential rider's own representations of his or her ability. The exception imposes obligations to make a "reasonable effort"; it does not impose strict liability for errors of judgment or for subsequent accidents.

Dilley adduces no evidence that Krier, anyone else at Holiday Stables, or anyone at Holiday Acres, failed to make a reasonable assessment of Dilley's capacity to ride or her ability to manage Blue, the horse provided to her. Dilley does not contend that she was incapable of safely riding at all, so she cannot show that anyone failed to make a reasonable determination of her general ability to safely engage in horseback riding. Dilley testified that Krier and Kremsreiter asked her whether she had ever ridden a horse. Dkt. 60 (Dilley Dep. 28:23-29:6, 54:24-55:1). And based on her reply that she had not, Krier gave her Blue, the most docile horse that Krier had. Blue was one of the horses that was suited to a beginning rider.[1] Dilley has adduced nothing to show that anyone failed to make a reasonable determination about her ability undertake the ride or whether she could manage the horse assigned to her. Under the undisputed facts of this case, this exception does not apply.

The bottom line is that Dilley alleges that Krier and Kremsreiter were negligent in conducting the ride during which Dilley was injured. But the equine immunity statute affords immunity for such negligence, unless one of the enumerated exceptions applies. And because Dilley cannot show that any of the exceptions applies to Holiday Acres, Holiday Acres is entitled to summary judgment.

---

[1] Dkt. 39 (Kremsreiter Dep. 25:21-25 ("And then we match up the rider, depending on experience, youth, age, just weight can be a factor. And then we match them as best we can, and this is done by Steve. He matches them to each horse."), 35:13-15 ("And I asked him which horses we should use, and I suggested we both agreed upon Blue and Roany."), 56:2-8 ("[D]id you believe that Blue was the correct size and the correct horse for Ms. Dilley? Yes. He, we normally use him for young children, because he is such an easygoing horse. So we felt that he would be a good fit for a beginner rider.")). *See also* Dkt. 38 (Krier Dep. 80:14-81:2 ("Q. . . . Now you say when someone is little, you give them a horse that will babysit them? A. Yes . . . They just walk the trail, they don't do anything wrong . . . And which horses are those? Baldy, Rusty, and Blue.").

**2. Holiday Acres is not liable for the acts of Krier or Holiday Stables**

Dilley would like to hold Holiday Acres liable for acts by Krier or employees of Krier's business, Holiday Stables. The only theory that Dilley argues is that Holiday Acres and Holiday Stables are actually the same entity. Dkt. 59, at 10. To show that Holiday Acres and Holiday Stables are one and the same, Dilley points to these facts:

> When Holiday Acres set up the stables, Holiday Acres was "looking to have a stables that was in close proximity to the resorts";
>
> Krier's business maintained its name "Holiday Stables" since the 1960s, even though its ownership changed every 10 years;
>
> Holiday Acres' management "appreciated . . . having horses" on its property;
>
> Holiday Acres and Krier's business offer several services "in cooperation";
>
> Krier's horse-riding tours take place on Holiday Acres' land;
>
> Kriers is the only person who operates a business on Holiday Acres' land for free;
>
> Holiday Acres and Krier's stables advertise on the same billboards; and
>
> Krier's business titled its Facebook page as "Holiday Stables at Holiday Acres Resort."

*Id*. at 8-9. But Dilley cites no legal authority, and she does not explain how these facts show that the two entities are actually one, or even that they should be treated as one. Because her argument is so undeveloped, it is waived. *See Petri v. Gatlin*, 997 F. Supp. 956, 976 (N.D. Ill. 1997) ("[The] court has no duty to research and construct legal arguments available to a party . . . and a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." (quoting

*Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) and *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995))).

Even if the court were to give Dilley the benefit of the doubt and try to provide a legal framework in which these facts mattered, Dilley would not prevail. Given her emphasis on the defendants' advertising, one argument that Dilley might have made is that Holiday Acres is liable for the actions of Holiday Stables under the doctrine of apparent authority. Apparent authority arises when a principal holds out another as possessing some authority to act for the principal, even though the other does not actually have that authority. *Pamperin v. Trinity Memorial Hospital*, 144 Wis.2d 188, 203, 423 N.W.2d 848 (1988). But apparent authority arises only on the basis of affirmative acts of the principal that vest the other with the appearance of authority. *Amplicon, Inc. v. Marshfield Clinic*, 786 F.Supp. 1469, 1476 (W.D. Wis. 1992) (*citing Sater v. Cities Service Oil Co.*, 235 Wis. 32, 40, 291 N.W. 355 (1940)).

The burden to prove apparent authority is on the party asserting it, and here that would be Dilley. *Laborers Int'l Union of North America v. HSA Contractors, Inc.*, 728 F. Supp. 519, 525 (E.D. Wis. 1989). To establish that Holiday Stables had apparent authority, Dilley must show "(1) acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held; and (3) reliance thereon by the plaintiff consistent with ordinary care and prudence." *Lamoreux v. Oreck*, 2004 WI App 160, ¶ 52, 275 Wis. 2d 801, 686 N.W.2d 722. The reliance must be reasonable, as assessed objectively in light of all facts and circumstances. *Everlite Mfg. Co. v. Grand Valley Mach. & Tool Co.*, 44 Wis. 2d 404, 410, 171 N.W.2d 188 (1969).

Dilley states in her additional proposed findings of fact that she relied on Holiday Stables' relationship with Holiday Acres when she decided that it would be safe to ride a horse

13

from Holiday Stables. Dkt. 58, ¶ 5. To support this fact, she relies on her deposition testimony. Dkt. 60 (Dilley Dep. 143:11-17). But her proposed fact and her deposition testimony are conclusory: she does not identify what information led her to believe that Holiday Stables was part of, or an agent for, Holiday Acres. And Dilley adduces no evidence that she was aware of any of the facts relating to the history of Holiday Stables or its ownership when she decided to go riding.

The only facts that could conceivably show action by Holiday Acres, of which Dilley might have been aware, were the ones relating to the alleged joint advertising. Dilley states "Holiday Acres Resorts advertised rides at Holiday Stables as a part of its activities, and used pictures of parents and children sitting atop horses in a grassy clearing." Dkt. 58, ¶ 6. But the cited evidence—her deposition again—does not establish this fact. The best example the court can find in the record is the printout of the activities page on Holiday Acres' web site, which includes the statement "Stables provide a wagon ride. Join in some old-fashioned fun. $5 each." Dkt. 58-11. But the included web page says nothing about horse-back riding. In any case, even if Dilley pointed to joint advertising, joint advertising alone is not enough to establish apparent authority. *See Iowa Nat. Mut. Ins. Co. v. Backens*, 51 Wis. 2d 26, 36, 186 N.W.2d 196, 201 (1971) (holding that a tire re-capper was not an apparent agent of a tire manufacturer, even though they advertised together, when the plaintiff chose the re-capper because the re-capper was a friend and the re-capper's business was at a convenient location).

Dilley has not shown that Holiday Stables is actually the same entity as or part of Holiday Acres. Nor has she shown that Holiday Stables is an agent of Holiday Acres or that Holiday Acres is liable under an apparent authority theory. Holiday Acres is not liable to Dilley for the actions of Krier or the employees of Holiday Stables.

### 3. Kier and Holiday Stables are entitled to immunity

Dilley also asserts negligence, negligence per se, and "Willful, Wanton & Malicious Conduct" claims against Krier. Dkt. 21, ¶¶ 26-36. Krier, who appears pro se, has not moved for summary judgment. But the parties' summary judgment submissions show that the equine immunity statute would bar Dilley's claims against Krier and Holiday Stables, too.

Krier and Kremsreiter are equine professionals that fall within the scope of the immunity conferred by § 895.481(2). For reasons explained above, Dilley's allegations that Krier and Kremsreiter were negligent in conducting the ride during which Dilley was injured do not implicate any of the exemptions in § 895.481(3). But two more issues pertinent to Krier and Kremsreiter warrant further discussion.

First, Dilley contends that the exception in § 895.481(3)(a) applies to Krier. That exception applies to one who:

> [p]rovides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death.

But there is no evidence that Krier provided equipment or tack that was faulty, or that faulty equipment caused Dilley's injuries. Dilley's theory is that Krier failed to *offer* a helmet and failed to properly adjust her stirrups. But the failure to offer equipment, or the failure to adjust equipment, is not the same as providing faulty equipment. Besides, Krier had helmets available at Holiday Stables. Dkt. 39 (Kremsreiter Dep. 25:11-14). Perhaps Dilley's theory is that Krier or Kremsreiter should have asked if Dilley wanted a helmet, or advised her to wear a helmet, but Dilley has provided no argument or authority why the failure to offer equipment or advise the use of equipment falls within the exception in § 895.481(3)(a), which by its terms relates to faulty equipment.

Second, Dilley contends that Krier violated § 895.481(4), which requires an equine professional to post a specified warning notice:

> Every equine professional shall post and maintain signs in a clearly visible location on or near stables, corrals or arenas owned, operated or controlled by the equine professional. The signs shall be white with black lettering, each letter a minimum of one inch in height, and shall contain the following notice: "Notice: A person who is engaged for compensation in the rental of equines or equine equipment or tack or in the instruction of a person in the riding or driving of an equine or in being a passenger upon an equine is not liable for the injury or death of a person involved in equine activities resulting from the inherent risks of equine activities, as defined in section 895.481 (1) (e) of the Wisconsin Statutes."

But there are two problems with Dilley's argument. First, although the statute requires the posting of the notice, nothing in the equine immunity statute makes posting the notice a prerequisite to immunity.[2] Second, it is undisputed that Krier had posted a sign that provided the substance of the statutory notice. *Compare* § 895.481(4), *with* Dkt. 58-14, *and* Dkt. 58-15. Dilley cites no authority holding that the notice is not effective unless it is a word-for-word match with the statute.

So it appears that Krier would also entitled to summary judgment because the equine immunity statute bars Dilley's claims against him and the employees of Holiday Stables. Although Krier has not moved for summary judgment, under Rule 56(f), a district court may enter summary judgment without a formal motion from a party, on grounds not raised by a party. But before entering summary judgment, the court must, under most circumstances, give

---

[2] Dilley cites *Geman v. McLaury*, 2005 WI App 111, ¶ 6, 283 Wis. 2d 507, 698 N.W.2d 132, as holding that immunity does not attach unless the required notice is posted. Dkt. 59, at 2. But *Geman* says no such thing; it simply cites the statutory notice requirement. It was undisputed that the notice had been posted on the defendant's property, *id*. at ¶ 10, so *Geman* implies nothing about whether the notice is a prerequisite to immunity.

the adverse party notice and reasonable opportunity to respond. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015); *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 910-11 (7th Cir. 2012). This is not the typical circumstance because Dilley has set out the evidence and arguments that would support a claim against Krier in response to Holiday Acres' motion for summary judgment. The court sees no realistic chance that Dilley will be able to show that summary judgment for Krier is not warranted. But in an abundance of caution, the court will give Dilley a short deadline to explain why the court should not enter summary judgment in favor of Krier.

**C. Holiday Acres' motion for a protective order**

Holiday Acres also moves for a protective order, Dkt. 86. Dilley served 59 requests for admissions on Krier, Dkt. 87-1, but she did not serve similar requests on Holiday Acres. Holiday Acres contends that Dilley is attempting to exploit Krier's pro se status to secure advantageous admissions to use against Holiday Acres. Dilley responds that she is seeking legitimate discovery from a party. The court will defer ruling on the motion for protective order until Dilley responds to the court's order under Rule 56(f). If the court grants summary judgment for Krier, the motion will be moot. Neither Krier nor Holiday Acres needs to respond to the challenged requests until the court receives Dilley's response and rules on it.

ORDER

IT IS ORDERED that:

1. Defendant Holiday Acres Properties, Inc.'s motion for summary judgment, Dkt. 40, is GRANTED.

2. Defendant Holiday Acres Properties, Inc.'s motion to strike, Dkt. 62, is GRANTED.

3. Defendant Holiday Acres Properties, Inc. is DISMISSED from the case.

4. Plaintiff Judy Dilley is directed to respond to this order by June 12, 2017, and explain why the court should not grant summary judgment in favor of defendant Steve Krier under Federal Rule of Civil Procedure 56(f) and dismiss the case.

5. Ruling on defendant Holiday Acres Properties, Inc.'s motion for a protective order, Dkt. 86, is DEFERRED.

Entered May 31, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge